UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LYNN MUELLER and GARY MUELLER, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> FARMERS INSURANCE COMPANY, INC., ) <br> ) <br> Defendant. ) | Case No. 4:08CV02032 ERW |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Farmer Insurance Company, Inc.'s Motion for Summary Judgment [doc. #13] and Plaintiffs Lynn Mueller and Gary Mueller's Motion for Summary Judgment [doc. #16].

**I.   BACKGROUND**[1]

Plaintiffs Lynn Mueller and Gary Mueller ("Plaintiffs") seek to recover under-insured motorist ("UIM") benefits under two insurance policies issued by Defendant Farmers Insurance Company, Inc. ("Defendant"), for losses sustained in a vehicle collision in which Plaintiffs' son Daniel Mueller ("Decedent") was killed. Plaintiffs' other son, Matthew Mueller, is the named insured on these policies.

The dispute between the parties concerns whether the terms and conditions of the two policies permit Plaintiffs to recover UIM benefits for the accident in question. The policies both provide UIM coverage of $100,000 per person and $300,000 per accident, and are subject to identical terms and conditions. The provisions relevant to this case are set out below:

---

[1]The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Facts and Plaintiffs' Statement of Uncontroverted Facts.

The insuring agreement provision:

> We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an UNDERinsured motor vehicle because of bodily injury sustained by an insured person. The bodily injury must be caused by an accident, and arise out of the ownership, maintenance or use of the UNDERinsured motor vehicle.

Definitions:

> a.  Insured person means:
> 1.  You or a family member.
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
> c.  Underinsured Motor Vehicle – means a land motor vehicle to which a bodily injury liability bond or policy applies at the time of the accident but its limits for bodily injury liability are less than the limits of liability for this coverage.

These "Limits of Liability" provisions:

> a.  Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of UNDERinsured Motorist Coverage stated in the policy, and the most we will pay will be the lesser of:
> 1.  The difference between the amount of an insured person's damages for bodily injury, and the amount paid to that insured person by or for any person or organization who is or may be held legally liable for the bodily injury; or
> 2.  The limits of liability of this coverage.
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
> f.  The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by any amount paid or payable to or for an insured person;
> i.  by or for any person or organization who is or may be held legally liable for the bodily injury to an insured person; . . .

Richard Burr ("Burr") was the driver of the other vehicle involved in the accident ("the tortfeasor vehicle"). United Services Automobile Association ("USAA") insured the tortfeasor vehicle under a policy with liability limits of $100,000 per person and $300,000 per accident. Plaintiffs settled with Burr for the full amount of his policy – $100,000.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

In contract actions governed by Missouri law, a dispute as to the meaning of contractual terms does not necessarily render summary judgment inappropriate, as the interpretation of a contract is a question of law. *Wentzville Park Assocs., L.P. v. Am. Cas. Ins. Co. of Reading, Pa.*, 263 S.W.3d 736, 739 (Mo. App. E.D. 2008). In fact, summary judgment is a proper method for determining whether a contract or insurance policy is ambiguous and how an unambiguous policy should be interpreted. *Atkins v. Hartford Cas. Ins. Co.*, 801 F.2d 346, 348 (8th Cir. 1986). Summary judgment is improper, however, "where the disputed contract language is ambiguous and parol evidence is required to interpret the contract and the parties' intent." *Zeiser v. Tajkarimi*, 184 S.W.3d 128, 132 (Mo. App. E.D. 2006). In such a case, the intent of the parties as to the meaning of the contract is a genuine issue of material fact that should be resolved at trial. *Id.* at 132-33.

## III. DISCUSSION

There are no disputed facts in this case, and both parties now move for summary judgment. Defendant contends that summary judgment in its favor is proper because the tortfeasor vehicle is not "underinsured" according the unambiguous terms and conditions of coverage.[2] Plaintiffs concede that the tortfeasor vehicle does not meet the definition of "underinsured motor vehicle" in the policies; they argue, however, that they are still entitled to summary judgment because there is an ambiguity in the policies that must be resolved in favor of coverage.

The parties assume that Missouri substantive law controls this diversity case, and under Missouri law, unambiguous terms in an insurance policy "are given their plain meaning and enforced as written, while ambiguous terms are construed against the insurer." *Lindsay v. Safeco Ins. Co. of Am.*, 447 F.3d 615, 617 (8th Cir. 2006). This "plain meaning" refers to how an "ordinary person of average understanding" would understand the policy when purchasing insurance. *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. 2009). Ambiguity exists where there is "duplicity, indistinctness, or uncertainty" in the language of the policy or, put another way, where the language is "reasonably open to different constructions." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (internal citations omitted).

As noted above, the parties agree that the tortfeasor vehicle is not "underinsured" under the terms of the Defendant's policies. This does not end the inquiry, however, because Missouri courts have routinely held that "underinsured" status is not a threshold question. *See, e.g.*, *Am. Family Mut. Ins. Co. v. Ragsdale*, 213 S.W.3d 51, 56 (Mo. App. W.D. 2006) ("[T]his court

---

[2] Defendant offers a number of additional arguments in support of summary judgment, but the Court considers only this issue because it finds it to be dispositive.

declines to perform an isolated examination of the definition of Underinsured Motor Vehicle, and instead views all relevant provisions of the underinsured motorist endorsement . . . ."); *see also Ware v. Geico Gen. Ins. Co.*, 84 S.W.3d 99, 102-03 (Mo. App. E.D. 2002); *Goza v. Hartford Underwriters Ins. Co.*, 972 S.W.2d 371, 373-74 (Mo. App. E.D. 1998); *Zemelman v. Equity Mut. Ins. Co.*, 935 S.W.2d 673, 677-78 (Mo. App. W.D. 1996).

Although a single provision in a policy may indicate that UIM coverage is not available in a given situation, one must read the policy as a whole because other provisions in the policy may create an ambiguity such that an ordinary person of average understanding might believe that the policy provides for UIM coverage over and above that furnished by other insurance. *See Goza*, 972 S.W.2d at 374. Specifically, Missouri courts have noted that this type of ambiguity arises in policies with "excess" or "other insurance" clauses that give the impression that "the underinsured coverage is excess over all other collectible insurance at the time of the accident." *See Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 133 (Mo. 2007); *Zemelman*, 935 S.W.2d at 677.

Because insurance policies are construed against the insurer, if such an ambiguity exists, the insured may be entitled to recover UIM benefits, even if the vehicle in question does not meet the policy's definition of underinsured vehicle and the policy contains a "limits of liability" provision that would reduce the insurer's obligation to zero. *See Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 133-34 (Mo. 2007). In these situations, the ambiguity is resolved in favor of coverage for the insured, instead of resulting in a genuine issue of material fact that must be resolved at trial. *See id.* at 134.

Plaintiffs do not claim that there is an ambiguous "excess" or "other insurance" provision in Defendants' policies; instead, they argue that the ambiguity arises out of a conflict between the following two "Limits of Liability" provisions:

5

> a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of UNDERinsured Motorist Coverage stated in this policy, and the most we will pay will be the lesser of:
> 1. The difference between the amount of an insured person's damages for bodily injury, and the amount paid to that insured person by or for any person or organization who is or may be held legally liable for the bodily injury; or
> 2. The limits of liability of this coverage.
>
> ****************************************************************
>
> f. The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by any amount paid or payable to or for an insured person;
>    i. by or for any person or organization who is or may be held legally liable for the bodily injury to an insured person

Plaintiffs contend that these clauses are ambiguous because the policy uses the "limits of liability" language in paragraph a.2 to refer to the amount of coverage available, but in paragraph f., the policy refers to "[t]he amount of UNDERinsured Motorist Coverage we will pay." As such, Plaintiffs claim, paragraph f. is unclear because if the maximum payout in a given situation (such as this one) is the policy's liability limits pursuant to paragraph a.2, then paragraph f. should refer to a reduction in the policy's liability limits, not a reduction in "[t]he amount of UNDERinsured Motorist Coverage we will pay." Plaintiffs appear to argue that a logical reading of these two provisions is that paragraph f. has no effect at all, because one could not know that paragraph f. is intended to apply to the maximum payout set out in paragraph a.

The Court disagrees and concludes that these provisions are not ambiguous. The policy does not refer to "the limits of liability of this coverage" in paragraph f., because if it did, it would be unclear whether paragraph f. mandates an offset where the maximum payout under paragraph a. is not the policy's liability limit pursuant to paragraph a.2, but instead is "[t]he difference between the amount of an insured person's damages for bodily injury, and the amount paid to that insured person by or for any person or organization who is or may be held legally liable for the bodily injury" as set out in paragraph a.1. In other words, in paragraph f., Defendant was

6

required to refer to the maximum payout under the policy with a generalized phrase – specifically, "[t]he amount of UNDERinsured Motorist Coverage we will pay" – in order to make it clear that the offset for tortfeasor recoveries applies regardless of whether the maximum payout is the amount in paragraph a.1 or paragraph a.2.

Furthermore, even if the Court found these provisions ambiguous, they do not create any ambiguity as to the availability of UIM coverage. As noted above, courts have found UIM policies ambiguous where there were "excess" or "other insurance" clauses indicating that recovery under the policy would be in excess of amounts recovered from the tortfeasor, clauses that arguably conflicted with other policy provisions providing for an offset for tortfeasor recoveries and precluding UIM coverage where the tortfeasor has the same liability limits as the insured. *See Seeck*, 212 S.W.3d at 133. The "other insurance" clause in *Ragsdale* – to which Plaintiffs cite in support of their argument – is typical:

> If there is other similar insurance on a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance.

*Am. Family Mut. Ins. Co. v. Ragsdale*, 213 S.W.3d 51, 56 (Mo. App. W.D. 2006). Missouri courts hold that the second sentence, specifically the "other similar insurance" language, is ambiguous, because one could reasonably understand it to provide coverage over and above that collected from the tortfeasor. *See id.* at 56-57; *Seeck*, 212 S.W.3d at 133. Thus, if one gives the "other insurance" clause that meaning, it may indicate that coverage is available, while the typical definition of "underinsured motor vehicle" – one with a liability limit less than the liability limit under the UIM policy – may suggest the opposite.

The Court agrees with Defendant that such a situation is not presented here. In contrast to the cases discussed above, Plaintiffs' claimed ambiguity does not relate to whether UIM coverage is available; it only refers to the limits of liability – that is, the *amount* of UIM coverage available. This ambiguity – assuming it exists – would have no effect on the distinct issue of whether coverage is available. *See, e.g.*, *Empire Fire & Marine Ins. Co. v. Dust*, 932 S.W.2d 416, 418 (Mo. App. E.D. 1996) (ambiguity as to whether the policy permitted coverage for the insured's "fellow employees" was irrelevant to coverage question because insured was the employer and therefore did not have "fellow employees"). Plaintiffs fail to allege that there is any ambiguity in the policy that would lead one to believe that UIM benefits would be available where, as here, the tortfeasor vehicle has the same liability limits as the UIM policy. As such, Plaintiffs would not be entitled to recover UIM benefits under the policies even if the Court were to conclude that the provisions in question are ambiguous.

In sum, the Court concludes that summary judgment in favor of Defendant is proper because Plaintiffs are not entitled to recover UIM benefits under the unambiguous terms of the policies. The tortfeasor vehicle is not an "underinsured motor vehicle" under the plain language of the policies, and the "Limits of Liability" provisions are not ambiguous. Moreover, even if these provisions were ambiguous, this ambiguity would not be resolved in favor of coverage for the insured because it does not concern the issue of whether UIM coverage is available.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment [doc. #16] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [doc. #13] is **GRANTED**.

Dated this 13th Day of October, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE